**NOT FOR PUBLICATION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Henry, | No. CV-19-01121-PHX-SRB |
| Plaintiff, | **ORDER** |
| v. | |
| Freedom Mortgage Corporation, et al., | |
| Defendants. | |

Pending before the Court are Defendant Freedom Mortgage Corporation ("Defendant")'s Motion for Summary Judgment (Doc. 85 ("DMSJ")) and Plaintiff Shawn Henry ("Plaintiff")'s Motion for Partial Summary Judgment (Doc. 87 ("PMSJ")). In support of their respective Motions, Defendant filed a statement of facts (Doc. 86, Def.'s Statement of Undisputed Material Facts ("DSOF")); Plaintiff filed a statement of facts (Doc. 88, Pl.'s Separate Statement of Facts ("PSOF")); and each party filed a statement of controverting facts (Doc. 92, Def.'s Controverting SOF ("DCSOF"); Doc. 95, Pl.'s SOF in Opp'n to DMSJ ("PCSOF")). The Court heard oral argument on both Motions on March 31, 2020. (Doc. 103, Minute Entry.)

**I.    BACKGROUND**

   **A.    Factual**

In June 2011, Plaintiff and his former wife obtained a purchase-money mortgage loan from Wells Fargo to purchase a house in North Carolina (the "Property"). (PSOF ¶ 1; DSOF ¶ 1.) In March 2012, Plaintiff refinanced the Wells Fargo loan with Mortgage

Investors Corporation (the "Subject Loan") and granted a new mortgage on the Property to secure the refinanced debt (the "Mortgage"). (PSOF ¶ 2; DSOF ¶ 2.) Around March 2013, Plaintiff defaulted on the Subject Loan. (PSOF ¶ 3; DSOF ¶ 3.) Around November 2015, Plaintiff moved out of the Property to Arizona, where he now resides. (DSOF ¶¶ 4, 5; PCSOF ¶¶ 4, 5.)

In March 2016, Mortgage Investors Corporation assigned the rights under the Mortgage to Defendant, a financial institution which furnishes consumer information to consumer reporting agencies ("CRAs"). (PSOF ¶ 4; DSOF ¶ 6; Doc. 39, First Am. Compl. ("FAC") ¶ 4.) In October 2017, Defendant's substitute trustee foreclosed on the Property by conducting a trustee's sale under North Carolina law. (PSOF ¶ 5; DSOF ¶ 6.) Defendant acquired ownership of the Property through a winning credit bid of $64,719.00. (PSOF ¶¶ 6, 8; DCSOF ¶¶ 6, 8.) In November 2017, Defendant's substitute trustee filed a notice of foreclosure in the relevant North Carolina county, indicating that the Property was foreclosed in the amount of $129,116.00. (PSOF ¶ 7; Doc. 89-5, Ex. E (Not. of Foreclosure); DCSOF ¶ 7.)

In January 2018, Plaintiff alleges he applied for a mortgage loan and was denied.[1] (PSOF ¶ 9.) Plaintiff's application included a copy of his credit report obtained around the same time, which reflected an outstanding balance of $176,413.00 and a "past due" amount of $63,630.00 on the Subject Loan (the "Statement"). (PSOF ¶ 9 (citing Doc. 89, Decl. of David A. Chami, Ex. G); Doc. 89-7, Ex. G ("Jan. 2018 CTI Rpt.").) The Statement contained no indication that Plaintiff was not personally liable for the total reported amounts. (Jan. 2018 CTI Rpt.) Plaintiff alleges the mortgage company relied on the Statement in denying his application.[2] (PSOF ¶¶ 9, 10.)

In October 2018, Plaintiff mailed certified letters to three credit reporting agencies ("CRAs")—Credit Technology Inc. ("CTI"), Equifax Information Services, LLC

---

[1] Defendant admits only that "Plaintiff alleges that he tried to obtain a mortgage loan and was denied." (DSOF ¶ 8; *see* DCSOF ¶ 9.)
[2] Defendant disputes this allegation because "Plaintiff failed to disclose any information and/or documentation to identify the alleged mortgage company and the alleged mortgage loan." (DCSOF ¶¶ 9, 10.)

("Equifax"), and Experian Information Solutions, Inc. ("Experian"), disputing the accuracy of the Defendant's statement ("Dispute Letter").[3] (PSOF ¶ 11; DCSOF ¶ 11.) The Dispute Letter read in full:

> I obtained a VA mortgage in March 2012 to purchase a home in North Carolina. The property was later foreclosed upon in a Trustee Sale. It is my understanding that North Carolina has an anti-deficiency statute where a creditor cannot collect any money from the debtor after a trustee sale.
>
> I recently applied for a mortgage and was denied. For the above Freedom Mortgage account, you are reporting that I still owe over $176,000 and have a past due balance. I don't owe any money on this account. Please remove ALL owed balances on this account.
>
> After correcting this account please send me an updated copy of my credit report.

(DSOF, Ex. B at 9–14.) Equifax and Experian forwarded the Dispute Letter to Defendant, who responded by verifying the Statement as accurate. (PSOF ¶¶ 12–13; DCSOF ¶ 13; FAC ¶ 33; DMSJ at 4.) Thereafter Equifax and Experian continued to report the Subject Loan balance as $176,413.00 with a past due amount of $63,630.00.[4] (PSOF ¶¶ 13–14; Doc. 89-10, Ex. J (Equifax response to Dispute Letter); Doc. 89-11, Ex. K (Experian response to Dispute Letter); DCSOF ¶¶ 13–14.) Dissatisfied with this result, Plaintiff sued.

### B.   Procedural

On February 19, 2019, Plaintiff sued Defendant, CTI, Equifax, and Experian, alleging a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq. ("FCRA") in a single count against all named parties. (Doc. 1, Compl. ¶¶ 34–46.) On May 10, 2019, Plaintiff filed his First Amended Complaint ("FAC"), adding various factual allegations and specifying that he sought relief under 15 U.S.C. § 1681s-2(b) (Count 1); and 15 U.S.C. §§ 1681i and 1681e(b) (Count 2). (FAC ¶¶ 2, 19, 21, 24–28, 34–35, 39, 44–50, 53, 57.)

---

[3] Defendant disputes that Plaintiff himself "actually mailed" these letters. (DCSOF ¶ 11.)
[4] Defendant breaks down the Subject Loan debt as of October 2017 as follows: "Principal: $126,875.00"; "Interest: $16,678.00"; "Negative Escrow: $22,663.00"; "Late Charges: $806.00"; and "Fees: $9,391.00"—for a total rounded balance of $176,413.00. (Doc. 92-2, Ex. B, Decl. of Mark Phillips ¶ 5.) Defendant breaks down the past due amount as follows: "Late Payments: $50,321.36"; "Late Charges: $806.77"; and "Fees: $12,502.23"—for a total past due amount of $63,630.36. (Decl. of Mark Phillips ¶ 6.)

- 3 -

Subsequently, all parties except Defendant were dismissed. (Doc. 22, Not. of Voluntary Dismissal of Def. CTI, with Prejudice; Doc. 62, 9/11/19 Order (dismissing Equifax); Doc. 63, 9/11/19 Order (dismissing Experian).) On February 7, 2020, Plaintiff and Defendant filed cross-motions for summary judgment. Each party responded[5] and replied,[6] and the Court heard oral argument on both Motions.

## II. LEGAL STANDARD AND ANALYSIS

### A. Summary Judgment

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and internal punctuation marks omitted). The court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material "only if it might affect the outcome of the suit under the governing law." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). A dispute is genuine "only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Id.* The Court "tak[es] the evidence and all reasonable inferences in the light most favorable to the non-moving party." *Karasek v. Regents of the Univ. of Cal.*, 948 F.3d 1150, 1161 (9th Cir. 2020).

Defendant argues it is entitled to summary judgment on three grounds. First, the Dispute Letter failed to trigger Defendant's FCRA duties because (a) "it asserted a purely legal challenge regarding North Carolina law, rather than presenting a verifiable factual dispute," and (b) "Plaintiff has not established that he issued the [Dispute Letter] directly." (DMSJ at 2, 5–11.) Second, even if the Dispute Letter triggered Defendant's FCRA duties, "no level of investigation into the [Dispute Letter] . . . would have yielded a different result" because Plaintiff has not proved that North Carolina's anti-deficiency laws apply to preclude collection on the Subject Loan. (DMSJ at 2, 11–13.) Third, even if Defendant's

---

[5] Doc. 93, Pl.'s Opp'n to DMSJ ("Pl.'s Opp'n"); Doc. 91, Def.'s Resp. to PMSJ ("Def.'s Resp.").
[6] Doc. 100, Pl.'s Reply to Def.'s Resp. ("Pl.'s Reply"); Doc. 101, Def.'s Reply in Support of DMSJ ("Def.'s Reply").

- 4 -

investigation did not comply with the FCRA, Plaintiff cannot recover because he failed to establish that this noncompliance was either negligent or willful. (DMSJ at 2; 14–17.) Plaintiff argues he is entitled to partial summary judgment on the issue of liability on three grounds. First, Defendant's continued reporting of the Subject Loan balance as $176,413.00 and past due amount as $63,630.00 was inaccurate. (PMSJ at 10–18.[7]) Second, Defendant's investigation of this inaccuracy was unreasonable. (PMSJ at 9.) Third, Defendant's inaccurate reporting was willful or negligent. (PMSJ at 18–23.) Given the significant overlap in analysis, the Court groups parties' arguments together by issue.

### B. The FCRA

"Congress enacted the [FCRA] to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (internal citations and quotation marks omitted). "[T]o ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute." *Id.* at 1154. These duties include those set forth in § 1681s-2(b)(1), which provides that after receiving a notice of dispute pursuant to § 1681i(a)(2), a furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly–

---

[7] As Plaintiff neglected to number his pages, the Court's pincites refer to the Court-assigned page numbers heading this document.

- 5 -

          (i) modify that item of information;

          (ii) delete that item of information; or

          (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).  To establish a violation of § 1681s-2(b), a plaintiff must prove: (1) the defendant is a furnisher; (2) plaintiff properly notified a CRA that he disputed an item on his report as inaccurate; (3) the CRA notified the defendant of the alleged dispute; (4) the defendant's reporting was actually inaccurate; and (5) the defendant failed to conduct an investigation as required by § 1681s-2(b)(1).[8]  *Robbins v. CitiMortgage, Inc.*, No. 16-CV-04732-LHK, 2017 WL 6513662, at *5 (N.D. Cal. Dec. 20, 2017) (citing *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016)); *see also Gorman*, 584 F.3d at 1153–55 (overview of FCRA claims against furnishers).  Because the FCRA only provides a private right of action for violations that are willful or negligent, a plaintiff must also prove willfulness or negligence to recover.  *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002).

      Section 1681i, 15 U.S.C., provides the procedural path to trigger a furnisher's § 1681s-2(b)(1) duties.  A consumer submits his dispute to a CRA, who relays the substance of the dispute to the furnisher of the disputed information.  15 U.S.C. §§ 1681i(a)(1)(A), 1681i(a)(2)(A).  Receipt of the forwarded dispute triggers the furnisher's § 1681s-2(b)(1)'s duties.  *Id.* § 1681s-2(b)(1); *Gorman*, 584 F.3d at 1154.  Parties' disagreement boils down to Plaintiff's compliance with § 1681i(a)(1)(A), Defendant's compliance with § 1681s-2(b)(1), and Defendant's intent, if any, behind its noncompliance.

### a.   Plaintiff's Compliance with § 1681i(a)(1)(A)

"A furnisher's obligation to conduct a reinvestigation[9] is only triggered if the consumer submits a notice of dispute to the [CRA] as contemplated by 15 U.S.C. § 1681i."

---

[8] At issue here are elements (2), (4), and (5); parties do not dispute that (1) Defendant is a furnisher or (3) the CRAs notified Defendant of Plaintiff's dispute.
[9] Courts use *investigation* and *reinvestigation* interchangeably to refer to the inquiry a furnisher must conduct under § 1681s-2(b)(1)(A).  The Court uses *investigation* but retains *reinvestigation* in direct quotations.

*Blau v. Am.'s Servicing Co.*, No. CV-08-773-PHX-MHM, 2009 WL 3174823, at *11 (D. Ariz. Sept. 29, 2009). Under § 1681i, a consumer disputing the "completeness or accuracy of any item" in his credit report must "directly" notify the CRA of his dispute. 15 U.S.C. § 1681i(a)(1)(A). This means that the dispute must "come *from* the consumer and be sent *to* the agency." *Warner*, 931 F.3d at 921 (emphasis in original). A dispute does not come directly from the consumer when he has "no part in drafting, finalizing, or sending" it. *Id.* at 919. A credit repair organization, for example, cannot submit a dispute on a consumer's behalf. *In re Experian Info. Sols., Inc.*, No. CV-15-01212-PHX-GMS, 2017 WL 3559007, at *4 (D. Ariz. Aug. 17, 2017), *aff'd sub nom. Warner v. Experian Info. Sols., Inc.*, 931 F.3d 917 (9th Cir. 2019).

Defendant challenges Plaintiff's compliance with § 1681i on two grounds. (DMSJ at 5–11.) Defendant first argues that to the extent Go Clean[10] sent the Dispute Letter or assisted in its preparation, Plaintiff did not directly notify the CRAs. (DMSJ at 9.) But Plaintiff has established that he, not Go Clean, sent the Dispute Letter. Plaintiff's handwriting was on the certified mail receipts and the envelope copies attached to the certified mail envelopes, and Plaintiff testified that he "physically mail[ed] out" copies of the letter. (Pl.'s Opp'n at 12 (quoting Doc. 94, Decl. of Dawn M. McCraw ("McCraw Decl."), Ex. B, Excerpt of Henry Dep. at 134:15–23; 135:4–19).)[11] And even if Go Clean assisted Plaintiff in some way with preparing the Dispute Letter,[12] Plaintiff need only establish that he had *some* role in "drafting, finalizing, or sending" it. *See Warner*, 931 F.3d at 919. Mere assistance in preparing a letter does not prevent the consumer from sending the letter. *Warner*, 931 F.3d at 919; *cf. Cohen v. Equifax Info. Servs.*, LLC, No. 18-CV-6210 (JSR), 2019 WL 5200759, at *6 (S.D.N.Y. Sept. 13, 2019) ("[I]t would seem unreasonable to say that a consumer did not notify a credit reporting agency if, for example,

---

[10] Go Clean Credit, LLC ("Go Clean") is a credit repair organization. (DMSJ at 9.)
[11] Defendant objects to Plaintiff's use of the McCraw Declaration to establish that McCraw—an attorney—"assisted [Plaintiff] with [preparing] the Dispute" because "her involvement . . . was never disclosed in discovery." (DMSJ at 1.) Because this Order does not use the McCraw Declaration for the purpose Defendant objects to, the Court does not address this argument.
[12] Plaintiff denies this allegation. *Compare* DMSJ at 9 (citing DSOF ¶ 14) *and* DSOF ¶ 14 (citing Ex. C, Henry Dep., at 89:5–25) *with* Pl.'s Opp'n at 10.

they contacted the agency through an attorney."). To hold otherwise would impose a requirement more rigid than necessary to "confirm[] that the disputes" are "legitimate"— the function of the direct-notification requirement. *See Warner*, 931 F.3d at 918.

Defendant next argues that the nature of the Dispute Letter is a disagreement with the legal enforceability of Plaintiff's debt, not with the factual accuracy of Defendant's Statement. (DMSJ at 5–6; Def.'s Reply at 3.) As such, Defendant maintains that its receipt of the letter was insufficient to trigger its duties under § 1681s-2(b)(1). (DMSJ at 5–6; Def.'s Reply at 3.) But Defendant's argument—aimed as it is toward whether the Dispute Letter complied with § 1681i—is misdirected. Defendant's argument pertains to whether Plaintiff established an inaccuracy of the kind required to prove a violation of § 1681s-2(b), not to whether Defendant's duties were triggered by receipt of the letter.[13] Accordingly, this argument is considered in Section II(B)(c). Because Plaintiff established that he sent the Dispute Letter, and parties agree that the letter was sent to the CRAs, Plaintiff proved compliance with § 1681i(a)(1)(A). Defendant's receipt of the forwarded Dispute Letter therefore triggered its duties under § 1681s-2(b)(1).

### b. Defendant's Compliance with § 1681s-2(b)(1)

#### 1. Reasonable Investigation

Section 1681s-2(b)(1) requires a furnisher to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). The scope of this investigation must be reasonable. *Gorman*, 584 F.3d at 1157. A reasonable investigation requires "an inquiry likely to turn up information about the underlying facts and positions

---

[13] The case Defendant cites in support, *DeAndrade v. Trans Union LLC*, confirms that this argument is misdirected. 523 F.3d 61 (1st Cir. 2008). In *DeAndrade*, the court considered this argument in the context of whether a CRA violated § 1681i(a)(1)(A)'s *CRA investigation requirement* by failing to investigate the legal validity of a mortgage. *Id.* at 64. Section 1681i(a)(1)(A)'s CRA investigation requirement "is analogous to" § 1681s-2(b)(1)'s furnisher investigation requirement. *DiPrinzio v. MBNA Am. Bank, N.A.*, No. 04-872, 2005 WL 2039175, at *10 (E.D. Pa. Aug. 24, 2005). Like the argument in *DeAndrade*, Defendant's argument is properly directed at whether it substantively complied with its duty to investigate an inaccuracy, not whether its duty to so investigate was triggered. This conclusion is also supported by *Bornstein v. Trans Union LLC*, in which this Court considered a similar legal/factual argument in the context of deciding whether plaintiff proved an inaccuracy sufficient to state a claim for a violation of § 1681s-2(b)(1). No. CV-18-04773-PHX-JJT, 2019 WL 2372020, at *3 (D. Ariz. June 5, 2019).

- 8 -

of the parties," which is not achieved by "a cursory or sloppy review of the dispute." *Id.* at 1155. "How thorough an investigation must be . . . turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute." *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016) (quoting *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012)). Reasonableness is assessed objectively "in light of what [the furnisher] learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman*, 584 F.3d at 1157; *Maiteki*, 828 F.3d at 1275 (objective standard). "[T]he burden of showing the investigation was unreasonable is on the plaintiff." *Maiteki*, 828 F.3d at 1275 (quoting *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010)).

Defendant argues that: (1) the scope of an investigation is "limited to 'the disputed information'"; (2) the Dispute Letter contests only the legal enforceability of the Subject Loan; and (3) the legal enforceability of a debt is unresolvable by a furnisher. (Def.'s Resp. at 3–5 (quoting 15 U.S.C. § 1681s-2(b)); *see also* DMSJ at 5–6, 8.) Defendant essentially asks the Court to conclude that a reasonable investigation here includes no investigation at all. (*See* Def.'s Resp. at 4, 6.)

The Court declines to so hold. Defendant's first premise, that the scope of an investigation is constrained by the disputed information, has been explicitly rejected by the Ninth Circuit. "In deciding that the notice determines the nature of the dispute to be investigated," the court cautioned, "we do not suggest that it also cabins the scope of the investigation once undertaken." *Gorman*, 584 F.3d at 1157 n.11. Defendant's second premise, that the Dispute Letter should be narrowly construed as contesting only the legal enforceability of the Subject loan, is also incorrect. "Nothing in [the governing case law] suggests that . . . a [c]ourt should narrowly limit the 'nature of the dispute' to the precise wording of the dispute letter." *Vandonzel v. Experian Info. Sols., Inc.*, No. 17-CV-01819-LHK, 2017 WL 3267571, at *4 (N.D. Cal. July 31, 2017). The Court understands the letter as contesting more than simply the legal enforceability of the Subject Loan. In it, Plaintiff conveys a disagreement with the reported balance and past due amount:

- 9 -

> For the above Freedom Mortgage account, you are reporting that I still owe over $176,000 and have a past due balance. I don't owe any money on this account.

(DSOF, Ex. B at 10.). Plaintiff ties this disagreement to the effects of the foreclosure proceeding:

> I obtained a VA mortgage in March 2012 to purchase a home in North Carolina. The property was later foreclosed upon in a Trustee Sale.

(*Id.*) While Plaintiff also conveys his understanding that North Carolina's anti-deficiency statute prevents creditors from "collect[ing] any money from the debtor after a trustee sale," this sentence cannot be read in isolation. Read in its entirety, the Dispute Letter reflects a disagreement with Defendant's Statement based on the effects of the foreclosure proceeding. Defendant's reading unduly constricts the scope of Plaintiff's disagreement.

The Court need not assess the viability of Defendant's third premise to hold Defendant's conclusion untenable. In *Abdelfattah v. Carrington Mortgage Services, LLC*, the court recognized that when investigating the accuracy of a reported home loan balance following a non-judicial foreclosure sale, "ignor[ing] the foreclosure sale and its effect on plaintiff's loan balance" is unreasonable. *Abdelfattah*, No. C-12-04656-RMW, 2013 WL 495358, at **1, 4 (N.D. Cal. Feb. 7, 2013). "A reasonable investigation," the court admonished, "would have determined that that information affected the plaintiff's account balance." *Id.* The Court agrees. Ignoring foreclosure events affecting a debt is an unreasonable way to ensure that the reported debt is accurate. Defendant's investigation should have assessed the accuracy of its Statement in light of the effects of the foreclosure proceeding. Instead, Defendant appears to have limited its inquiry to whether Plaintiff's debt was legally enforceable as a matter of North Carolina law, deemed that a question unanswerable by furnishers, and terminated its investigation. Such a cursory review was objectively unreasonable as a matter of law.[14]

---

[14] This investigation was particularly unreasonable given Defendant's own understanding of the nature of the Dispute Letter at the time of its receipt. In Plaintiff's account record, Defendant summarized Plaintiff's dispute as concerning the "Current Balance and/or Amount Past Due" and seeking to "Verify Current Balance or Amount Past Due." (*See*

- 10 -

### 2. Inaccuracy

"[E]ven if a furnisher fails to conduct a reasonable investigation, if a plaintiff cannot establish that a credit report contained an actual inaccuracy, then the plaintiff's [§ 1681s-2(b)] claims fail." *Finley v. Capital One*, No. 16-CV-01392-YGR, 2017 WL 1365207, at *3 (N.D. Cal. Apr. 14, 2017) (cleaned up) (citing *Keller v. Experian Info. Sols., Inc.*, No. 16-CV-04643-LHK, 2017 WL 130285, at *5 (N.D. Cal. Jan. 13, 2017)); *see also Won v. Nelnet Servicing, LLC*, No. CV 18-00381 ACK-RLP, 2019 WL 1548572, at *7 (D. Haw. Apr. 9, 2019) (concluding after exhaustive analysis that although Ninth Circuit has not explicitly required plaintiff to prove actual inaccuracy, it likely would). Information in a credit report is inaccurate if it is "patently incorrect" or "materially misleading." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010). Information is "patently incorrect" if it is "at the very least . . . inaccurate on its face[.]" *Calvillo v. Experian Info. Sols., Inc.*, No. 219CV00279JADBNW, 2020 WL 1433521, at *9 (D. Nev. Mar. 23, 2020) (quoting *Drew*, 690 F.3d at 1108). Information is "materially misleading" when it is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho*, 629 F.3d at 890 (quoting *Gorman*, 584 F.3d at 1163).

Parties agree that at the time Defendant conducted its investigation—around November 2018—Plaintiff did not owe Defendant the full $176,413.00 with a past due amount of $63,630.00.[15] Defendant, however, maintains that because at the time of its *original* reporting—October 2017—Plaintiff owed $176,413.00 with a past due amount of $63,630.00, a Statement reporting that those amounts were due at that time is, technically, accurate. (Def.'s Resp. at 10–11, 13.) Defendant's argument rests on the premise that to ensure its reporting is not patently incorrect or materially misleading, it "need only verify that at the time of its final report, its reporting was accurate." (Def.'s Resp. at 13.)

---

Doc. 89-16, PSOF Ex. O, at 19 (entries dated 11/16/18 and 11/20/18).) Defendant's real-time notations, far from reflecting a dispute about the Subject Loan's enforceability, summarize a more general disagreement with Defendant's computations.

[15] *See* PSOF ¶ 6; DCSOF ¶ 6 (parties agree that Defendant purchased Property with credit bid of $64,719.00); *see also* N.C. Gen. Stat. Ann. § 45-21.31 ("The proceeds of any sale shall be applied by the person making the sale . . . to the payment of . . . [t]he obligation secured by the mortgage . . . .").

- 11 -

This premise is unsupportable. Following receipt of a dispute, furnishers must review their reports "not only for inaccuracies in the information reported but also for omissions that render the reported information misleading." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008). So, too, must furnishers ensure their reports are "complete so as to not be misleading." *Venugopal v. Digital Fed. Credit Union*, No. 5:12-CV-06067 EJD, 2013 WL 1283436, at *3 (N.D. Cal. Mar. 27, 2013) (citing 15 U.S.C. § 1681s–2(b)(1)). Omitted or incomplete information can render a report inaccurate even if the report "contains *technically* accurate information." *Gorman*, 584 F.3d at 1163 (emphasis added) (quoting *Saunders*, 526 F.3d at 148). Consequently, although reporting that in October 2017, Plaintiff owed $176,413.00 with a past due amount of $63,630.00 may have been technically correct, it could still be inaccurate.

But the point is moot because Defendant's continued reporting of these figures following the trustee sale was not technically correct. Defendant failed to update the Statement to reflect the reduction occasioned by the credit bid. *See* N.C. Gen. Stat. Ann. § 45-21.31 ("The proceeds of any sale shall be applied by the person making the sale . . . to the payment of . . . [t]he obligation secured by the mortgage . . . ."). This failure rendered the Statement inaccurate on its face when Plaintiff accessed it in January of 2018, regardless of whether it was accurate at some earlier point in time.[16]

While the incorrect figure is sufficient to render the Statement inaccurate, the Court also finds the Statement materially misleading as a matter of law. Defendant's failure to account for the credit bid misrepresents Plaintiff's actual debt by over 150%, a vastly inflated figure whose misleading impression the Statement makes no attempt to counter. The Statement did not, for example, include a notation or any other indication[17] that a credit

---

[16] The Court has further reason to question the accuracy of the Statement: its reported amounts include roughly $9,000 and $12,000 of fees unexplained by anything in the record—a fact acknowledged by Defendant during oral argument. (*See* PSOF, Doc. 89-15, Ex. O (printout of Plaintiff's account history).)

[17] Defendant asserts that Plaintiff has failed to prove there is a feasible way to include such a notation on his credit report. *See* Def.'s Resp. at 11. But Defendant fails to explain why it could not leave a notation in the "Status" section in its report to Experian, or in the "Additional Information" section in its report to Equifax, both of which already contain notes regarding the Statement. (*See* Doc. 89-11, Ex. K, Experian's Resp. to Pl.'s Dispute Letter; Doc. 89-10, Ex. J, Equifax's Resp. to Pl.'s Dispute Letter at 5.)

bid applied. Any reasonable jury would expect such an inflated figure to adversely affect credit decisions.

Given the failures detailed above, the Court need not evaluate Plaintiff's argument that the Statement was materially misleading because Defendant would never collect the deficiency. (*See* PMSJ at 13.) Similarly, the Court need not address parties' arguments regarding the applicability of North Carolina's anti-deficiency laws[18] because the Statement is inaccurate irrespective of Defendant's intent or ability to collect.

The Court concludes as a matter of law that Plaintiff established an inaccuracy sufficient to state a claim for a violation of § 1681s-2(b). Because Plaintiff has established that his Dispute Letter was properly issued, Defendant's investigation was unreasonable, and its reporting was inaccurate, and parties do not dispute the remaining elements of a § 1681s-2(b)(1) claim, Plaintiff has established that Defendant violated the FCRA.

### c. Negligence, Willfulness, and Damages

Although Plaintiff has established a violation of § 1681s-2(b)(1), he cannot recover unless he proves the violation willful or negligent. *See* 15 U.S.C. §§ 1681n, 1681o (providing right of action and recoverable damages for willful or negligent violations, respectively). A violation is "willful" when "a defendant knowingly or recklessly violated the FCRA." *Shaw v. Experian Info. Sols., Inc*., 891 F.3d 749, 760 (9th Cir. 2018) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)). A violation is "reckless" when a defendant "adopts a reading of the statute that runs a risk of error 'substantially greater than the risk associated with a reading that was merely careless.'" *Syed v. M–I, LLC*, 853 F.3d 492, 504 (9th Cir. 2017) (emphasis removed) (quoting *Safeco*, 551 U.S. at 69). The Supreme Court has cautioned that if a defendant's interpretation of the FCRA is "not objectively unreasonable" based on the statutory text, judicial precedent, or guidance from administrative agencies, it "falls well short of raising the 'unjustifiably high risk' of

---

[18] Plaintiff argues the Statement was materially misleading because North Carolina's anti-deficiency statute prevents creditors from collecting on deficiencies following a foreclosure consummated by trustee sale. (PMSJ at 13–15 (citing North Carolina Gen. Stat. § 45-21.38A).) Defendant argues that a reasonable investigation would have yielded no different result because Plaintiff has not established that North Carolina's anti-deficiency laws preclude collection. (DMSJ at 11.)

- 13 -

violating the statute necessary for reckless liability." *Safeco*, 551 U.S. at 70. A willful violation renders furnishers liable for actual or statutory damages, punitive damages, costs of the action, and reasonable attorney's fees. 15 U.S.C. § 1681n(a)(1)–(3).

Plaintiff argues that Defendant's adoption of a blanket policy[19] of refusing to update consumer credit statements following foreclosure proceedings, as well as its specific refusal to so update Plaintiff's Statement, indicates both knowledge and recklessness. (PMSJ at 19, 22.) Defendant maintains that because it reports "what the 'true and actual account status was at the time of the foreclosure' and thereafter, stops reporting" it has not violated the FCRA, much less willfully violated the FCRA. (Def.'s Resp. at 13, 15.)

For reasons already mentioned, Defendant's investigation here—conducted in accordance with its blanket policy—was objectively unreasonable. Perhaps unsurprisingly, the policy itself contravenes judicial precedent. As the Ninth Circuit held over ten years ago, the "technical" accuracy of a reported figure does not insulate a furnisher from liability if the report is otherwise misleading in a material way. *Gorman*, 584 F.3d at 1163. *Gorman* specified that representing "a consumer's failure to pay a debt that is not really due" may materially mislead. *Id. Gorman* also noted the potentially misleading effect "omission of the disputed nature of the debt" might have. *Id.* at 1164. At least one court has recognized that a furnisher's report of a debt as it existed at the time of foreclosure, when the debt has since been reduced, may mislead. *Abdelfattah*, 2013 WL 495358, at *4 ("What is potentially misleading, however, is a report that there remains $596,870 owed when that is no longer the case following the foreclosure sale.") Such representations or omissions mislead because they "do[] not reflect financial irresponsibility." *Gorman*, 584 F.3d at 1164 (quoting *Sanders*, 526 F.3d at 148).

A policy designed merely to ensure a report's technical accuracy, without evaluating its potential to mislead, is objectively unreasonable under judicial precedent. Following this policy poses a risk of error "substantially greater than the risk associated with a reading that [i]s merely careless": Defendant's policy is *guaranteed* to produce inaccurate reporting

---

[19] There is some inconsistency as to whether Defendant's policy was written or unwritten, but no dispute as to the policy's existence. (*See* PMSJ at 19; Def.'s Resp. at 13.)

- 14 -

whenever a post-foreclosure event—such as the application of a credit bid—reduces consumer debt and the consumer disputes Defendant's unchanged reporting of the debt. The Court finds as a matter of law that Defendant recklessly, and therefore willfully, violated the FCRA. Because Plaintiff has established recklessness, the Court does not address parties' arguments regarding negligence, including arguments regarding Plaintiff's establishment of actual damages. Defendant's request for summary judgment on this issue is denied. Plaintiff's is granted.

### III.   CONCLUSION

Plaintiff directly notified CRAs of his dispute as required by 15 U.S.C. § 1681i(a)(1)(A). This triggered Defendant's duties to investigate the accuracy of Plaintiff's Statement and modify, delete, or permanently block any inaccurate reporting. Plaintiff established every disputed element of a § 1681s-2(b) violation. Defendant's adoption of a blanket policy of refusing to update consumer accounts following foreclosure proceedings—the policy responsible for the violation here—was reckless, and therefore willful. Because a reasonable jury could not find otherwise, Defendant's Motion is denied and Plaintiff is entitled to summary judgment on the issues of liability and willfulness.

**IT IS ORDERED** granting Plaintiff's Motion for Partial Summary Judgment against Defendant Freedom Mortgage Corporation (Doc. 87).

**IT IS FURTHER ORDERED** denying Freedom Mortgage Corporation's Motion for Summary Judgment (Doc. 85).

**IT IS FURTHER ORDERED** affirming the Jury Trial set for August 11, 2020.

Dated this 27th day of April, 2020.

_____
Susan R. Bolton
United States District Judge